’Turley, J.
delivered the opinion of the court.
The prisoner was convicted of the crime of murder in the second degree, at the August term, 1848, of the Circuit Court of Madison; upon the trial it was proved *664 that he was intoxicated, from the use of ardent spirits, at the time he committed the offence, and in relation thereto the judge charged the jury, “ that the fact of such drunkenness could not be taken into consideration by them, unless the defendant was so far gone, as not to be conscious of what he was doing, and did not know right from wrong.” Out of this charge arises the point to be considered by the court in this case, and that is, how far drunkenness, in law, is a mitigation or excuse for the commission of offences.
This is no new question, presented for the first time for consideration, but one of the earliest consideration in the law of offences; one which has been again and again adjudicated by the courts of Great Britain, and the United States, and, as we apprehend, with a consistent uniformity rarely to be met with in questions of alike interest and importance. Upon the subject we have nothing to discover, no new principle to lay dowri, no philosophical investigation to enter into, in relation to mental sanity or insanity, but only to, ascertain how the law upon this subject has been heretofore adjudged, and so to adjudge it ourselves. Lord Hale in his history of the pleas of the Ci’own, page 32, says: “ The third sort of madness is that which is dementia affectata, namely, drunkenness. This vice doth deprive a man of his reason, and puts many men into a perfect but temporary phrenzy; but by the laws of England, such a person shall have no privilege by his voluntarily contracted madness, but shall have the same judgment as if he were in his right senses.” In the case of Reniger vs. Fogosa, Plow. 19, it was laid down as a rule, “that if a person that is drunk kills another, this shall be felony and he shall be hanged for it; and yet he did it through ignorance; for when he was *665 drunk he had no understanding or memory, but inasmuch as that ignorance was occasioned by his own act and folly and he might have avoided it, he shall not be privileged thereby.” Lord Coke in his first Institute, 247, says: “As for a drunkard he is voluntarias daemon, he hath no privilege thereby; but what hurt or ill soever he doth, his drunkenness doth aggrevate it.” In Beverly's case, 4th Rep., it was held “that although he who is drunk, is for the time non compos mentis, yet his drunkenness doth not mitigate his act or offence, nor turn to his avail.” Hawkins in his pleas of the Crown, B. 1, ch. 1, sec. 6, says: “ He who is guilty of any crime’ whatever, through his voluntary drunkenness, shall be punished for it as much as if he had been sober.” Blackstone in the 4th Book of his Commentaries, 26, says: “As to artificial voluntarily contracted madness, by drunkenness or intoxication, which deprives men of their reason, and puts'them into a temporary phrenzy, our law looks upon this as an aggravation of the offence, rather than an excuse for any criminal behaviour. The law considering how easy it is to counterfeit this excuse, and how weak an excuse it is, though real, will not suffer any man thus to privilege one crime by another.” So Russell, in his Treatise on Crimes, vol. 1, page 7, says: “ With respect to a person non compos mentis from drunkenness, a species of madness which has been termed dementia affectata, it is a settled rule, that if the drunkenness be voluntary, it cannot excuse a man from the commission of any crime, but on the contrary must be considered as an aggravation of whatever he does amiss.” In the case of Cornwell vs. The State of Tennessee, Mar. and Yer. 147, 149, the able judge who delivered the opinion of the court, in speaking upon this subject, uses the following very emphatic language: “A *666 contrary doctrine ought to be frowned out of circulation, if it has obtained it, by every friend to virtue, peace, quietness and good government. All civilized governments must punish the culprit who relies on so untenable a defence; and in doing so they preach a louder lesson of morality, to all those who are addicted to intoxication, and to parents, and to guardians, and to youth, and to society, than comes in the cold abstract from pulpits.” To the justice and correctness of these remarks, all who have had experience in the annals of crime can bear testimony. It is only at the present term of the court that we have seen it proven, that an offender, a short time before the perpetratioiyof a horrid murder, enquired óf a grocery-keeper, what kind of liquor would make him drunk soonest, and swallowed thereupon a bumper of brandy. We have had three cases of murder, and one of an assault' with intent to murder, before us at this term of the court, in every one of which there were convictions in the Circuit Court and affirmances in this; every one of which is of aggravated character, and in every one of which the perpetrator at the time of the commission of the offence was laboring under dementia affectata, drunkenness; an awful illustration of the necessity of holding to the law, as it has been adjudged upon this subject. There is, in our judgment, no conflict of authority upon this point of law; every case which may have such appearance being a case of exception in the application of the rule, or a case of no authority upon the subject. Lord Hale in his work before referred to, part 1, ch. 4, says: “If by means of drunkenness, an habitual or fixed madness be caused, that will excuse, though it be contracted by the vice and will of the party; for this habitual or fixed phrenzy puts a man in the *667 same condition, as if it were contracted at first involuntarily.” And it was to this principle the Circuit Judge was alluding when he charged the jury in the present case, that the drunkenness of the prisoner could not be taken by them into consideration, unless he were so far gone as to be unconscious of what he was doing and did not know right from wrong; in saying which he put the case most favorable for the prisoner, for a man may be so intoxicated as to be unconscious of what he is doing, and not to know right from wrong; and yet not have contracted an habitual and fixed phrenzy, the result of intemperance, of which Lord Hale is speaking above. The case of Rex vs. Grindly, decided at Worcester, Sum. Ass., 1819, by Holroyd J., not reported, but referred to by Russell in his work upon crimes, page 8, and now Insisted upon by the prisoner as putting the Circuit Judge in the wrong in his charge to the jury, and holding different principles upon this subject, is expressly overruled by Park and Littledale judges, in the case of Rex vs. Carroll, 7 C. and P. 145; and if it were not, it is an anomalous case; and perhaps was not intended or considered by Holroyd, to be in conflict with principles so well and so long settled. The case as stated by Russell, holds that “ though voluntary drunkenness cannot excuse from the commission of crime, yet when upon a charge of murder, the material question is whether an act was premeditated, or done only with sudden heat and impulse, the fact of the party being intoxicated is a circumstance proper to be taken into consideration.” Now, in relation to this principle as thus laid down, it may be observed that cases may arise even of murder at common law in which it would be proper to receive such proof as explanatory of intention. To constitute *668 ’" murder at common law, the killing must have been done with malice aforethought; the existence of this malice, necessarily implies the absence of all circumstances of justification, excuse or mitigation arising from adequate provocation; and this malice is either express or implied; express when it has been perpetrated by poison, lying in wait, or other deliberate and premeditated manner, implied from the nature of the weapon, the violence of the assault, and the inadequacy of the provocation. lit may become important in a case to know- whether poison which has been imbibed, was administered knowingly and designedly, or accidentally; and if it be wilful, which it is in the case of the administratoin of a medicine, there being two on the table, one a poison, the other not, and the poison be administei’ed, is not the fact that the person who administered it, was drunk at the time, legitimate proof for the purpose of showing, that it was a mistake which a drunken man might make, though a sober one would not ? This would be not to protect him from the punishment for his crime; but to show that he had not given the poison premeditatedly, and therefore was guilty of no crime. So if the question be whether the killing is murder or manslaughter, the defence being adequate provocation, and it be doubtful ^whether the blow be struck upon the provocation or upon an old grudge, it seems to us proof that the prisoner was drunk when he struck the blow is legitimate, not to mitigate the offence, but in explanation of the intent, that is whether the blow was struck upon the provocation, or upon the old grudge ; for the law only mitigates the offence to manslaughter, upon adequate provocation, out of compassion to human frailty; and therefore, though there be adequate cause for such mitigation, yet if in point of fact, one avail *669 himself of it to appease an old grudge, it is murder, and not manslaughter; and in all such cases the question necessarily is, whether the blow was stricken premedi-tatedly, or upon the sudden heat and impulse produced by the provocation, and the fact of the self-possession of the perpetrator of the crime, is very material in a conflict of proof upon the subject. If this be the extent of the opinion of Holroyd in the case of Rex vs. Grindly, we are not prepared to hold that it is nqt_law!] But if it be understood to hold that a killing may be mitigated from murder to manslaughter in consequence of the drunkenness of the perpetrator, thereby making that adequate provocation, in the case of a drunken man, which could not be so in the case of a sober one, we are prepared to hold with Park and Littledale, that it is not law. The case of Swan vs. The State, 4 Hump. 136, has also been relied upon as containing doctrine adverse to that as above stated upon the subject of drunkenness as a defence in criminal cases. This is not so. That case expressly recognizes the correctness of the proposition upon this subject as laid down in this opinion, with an exception which necessarily exists under our statute classing murder into two degrees. The judge who delivered the opinion in that case, says: “The court was asked to charge as a matter of law, that drunkenness would reduce the crime of murder in the first degree, to that of murder in the second degree. The court in reply, said that drunkenness is no excuse or justification for any crime.
The legal correctness of the general statement of the court is abundantly sustained by a long and unshaken series of authorities in ancient and modern times, and by none more strongly and fully than by this court, in the case referred to in Martin’s and Yerger’s *670 Reports. Whatever ethical philosophy may make of the matter, such probably for stern reasons of policy and necessity will ever remain the doctrine of criminal courts.
But although drunkenness, in point of law, constitutes no excuse or justification for crime, still, when the nature and essence of a crime is made to depend by law, upon the peculiar state and condition of the criminal’s mind at the time, and with reference to the act done, drunkenness, as a matter of fact affecting such state and condition of the mind, is a proper subject for consideration and inquiry by the jury.
The question in such case is, what is the mental status ? Is it one of self possession favorable to the formation of a fixed purpose, by deliberation and premeditation, or did the act spring from existing passion excited by inadequate provocation, acting it may be on a peculiar temperament, or upon one already excited by ardent spirits. In such case it matters not that the provocation was inadequate, or the spirits voluntarily drank; the question is, did the act proceed from sudden passion or from deliberation or premeditation. What was the mental status at the time of the act, and with reference to the act?' To regard the fact of intoxication as meriting consideration in such a case, is not to hold that drunkenness will excuse crime, but to inquire whether the very crime which the law defines and punishes, has been in point of fact committed.
If the mental status required by law to constitute crime be one of deliberation and premeditation, and drunkenness or other cause excludes the existence of such mental state, then the crime is not excused by drunkenness or such other cause, but has not in fact been committed.”
This reasoning is alone applicable to cases of murder under our act of 1829, chap. 23, which provides “ that all *671 murder committed by means of poison, lying in wait, or any other kind of wilful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, burglary, or larceny, shall be deemed murder in the first degree, and all other kinds of murder shall be deemed murder in the second degree.” Now this is drawing a distinction unknown to the common law, solely with a view to the punishment ; murder in the first degree being punishable with death, and murder in the second degree by confinement in the penitentiary. In order to inflict the punishment of death, the murder must have been committed wilfully, deliberately, maliciously and premeditatedly; this state of mind is conclusively proven when the death has been inflicted by poison, or by lying in wait for that purpose; but if neither of these concomitants attend the killing, then the state of mind necessary to constitute murder in the first degree, by the wilfulness, the deliberation, the maliciousness, the premeditation, if it exist, must be otherwise proven ; and if it appear that there was sudden provocation, though not of such a character as at common law to mitigate the offence to manslaughter, and the killing thereupon takes place by sudden heat and passion, and without deliberation and premeditation, although the common law would presume malice, yet it is under the statute murder in the second degree, and not to be punished by death.
Then it will frequently happen necessarily, when the killing is of such a charactér as the common law designates as murder, and it has not been perpetrated by means of poison, or by lying in wait, that it will be a vexed [¡question whether the killing has been the result of sudden passion, produced by a cause inadequate to mitigate it to manslaughter, but still sufficient to mitigate it to murder in the *672 second degree, if it be really the true cause of the excitement, or whether it has been the result of deliberation and premeditation; and in all such cases whatever fact is calculated to cast light upon the mental status of the offender is legitimate proof; and among others, .the fact that he was at the time drunk-, not that this will excuse or mitigate the offence if it were -done wilfully, deliberately, maliciously, and premedi-tatedly; (which it might well be, though the perpetrator was drunk at the time,) but to show that the killing did not spring from a premeditated purpose, but sudden passion, excited by inadequate provocation, such as might reasonably be expected to arouse sudden passion and heat to the point of taking life, without premeditation and deliberation. This distinction never can exist except between murder in the first and murder in the second degree under our statute. It is upon such distinction, the remarks of the judge in the case of Swan vs. The State, are based, and by it they are to be confined. Thus far we recognize their justness, but can extend them no further.
If a drunken man commit wilful, deliberate, malicious, and premeditated murder, he is in legal estimation guilty as if he were sober. If he do it by means of poison knowingly administered, or by lying in wait, these facts are ■ as conclusive evidence against him as if he had been sober. If from the proof, in the absence of such lying in wait, or administering of poison, it shall appear, that the killing was wilful, deliberate, malicious, and premeditated, he is guilty as though he was sober. But in ascertaining the fact of such intention, all the concomitant circumstances shall be heard, in order to enable the jury to judge, whether such deliberate, wilful, malicious, and premeditated design existed, or whether the killing was not the result of sudden heat and passion, produced by *673 a sudden and unexpected controversy between the parties, but of such a character as not to mitigate the slaying to manslaughter. As between the two offences of murder in the second degree, and manslaughter, the drunkenness of the offender can form no legitimate matter of inquiry; the killing being voluntary, the offence is necessarily murder in the second degree, unless the provocation were of such a character as would at common law constitute it manslaughter, and for which latter offence a drunken man is equally responsible as a sober one.
We then think the circuit judge committed no error in his charge to the jury in this case, and affirm the judgment.